## *\*Spear· v. Hill.*

When various articles of property, attached and bailed to a sheriff's receiptor, are valued together in the receipt at one sum, and a part of them belong to and are taken by another person not a party to nor interested in the suit or the bailment, nor claiming under such a party, and the residue, being the property of the debtor, are worth more than the sum stated in the receipt, and the debt secured by the attachment is greater than the same sum, that sum is the measure of damages for the receiptor's neglect to deliver the debtor's property to the sheriff on demand.

---

\* Decided June term, 1872.                            Reporter.

Trover, by Justin Spear against Charles H. Hill, for one three-quarter pipe of gin, ten kegs and contents, one barrel of ale, sixteen bottles of wine, one hundred cigars, five barrels of liquor, and one keg of tomato ketchup.

The plaintiff is and was, in 1866, a deputy sheriff, and, on October 10, 1866, having in his hands a writ in favor of one William Stewart against one Dudley B. Emerson, attached the property in question, with other property, and took a receipt from the defendant in the usual form. The receipt included, in addition to the property embraced in this suit, the following other articles: viz.,—" one safe, three beer pumps, one stove, lot of decanters, eight marble top tables, four looking-glasses, four pitchers, twenty-four tumblers, one clock, twelve chairs, and a lot of crockery and tin ware." There was no separate valuation of the property, but the whole was valued at eight hundred dollars. There was no removal of the property by the sheriff. One Joseph G. Hill claimed to be the owner of all the property included in the receipt, and procured the defendant to sign the receipt, and afterwards said J. G. Hill disposed of all the property. For the purposes of this case and no other, it is agreed that the property embraced in this suit was at the time of the attachment the property of said Emerson, and that the remainder of the property, included in the receipt and not included in this suit, was not the property of said Emerson, but was the property of said Joseph G. Hill.

The suit of *Stewart* v. *Emerson* has been tried, and a verdict rendered in favor of the plaintiff for $898.83. It is also agreed that the property embraced in the receipt was worth much more than eight hundred dollars, and that the property embraced in this suit was also worth much more than eight hundred dollars. The plaintiff claims that he is entitled to recover in this suit the full value of the property embraced in it, not exceeding the amount of the judgment which may be obtained in the suit of *Stewart* v. *Emerson*, or, that he is entitled to recover the sum of eight hundred dollars, and interest from the date of the demand upon the defendant, April 14, 1871.

The defendant claims that the valuation in the receipt is conclusive upon the plaintiff, and that he is entitled to recover only such proportion of the sum of eight hundred dollars and interest as the property embraced in this suit bears to the whole property.

It was agreed that this case be submitted to the court upon the foregoing statement of facts, reserving to either party a jury trial, without prejudice from anything herein contained.

Case reserved.

*Morrison & Stanley*, for the plaintiff.

The case finds that the property embraced in this suit was worth much more than eight hundred dollars, enough to satisfy the judgment in *Stewart* v. *Emerson*. The plaintiff claims that he is entitled to recover (1) the full value of the property, or (2) enough to satisfy

said judgment, to wit, $898.83, or (3) the value of the property as given in the receipt, to wit, $800, with interest from the time of the demand.

1. That the plaintiff can recover in this form of action there is no doubt. *Poole* v. *Symonds*, 1 N. H. 289.   2. The judgment must be for the full value of the property. If the receiptor do not deliver the property to the officer on demand, he is liable for the full value, although the debt on which it was attached was for much less than the value of the property. For, although the full value may not be needed to satisfy the levy on which they were attached, the debtor's right must be protected; he is entitled, after the satisfaction of the debt, to have the residue returned to him, or its full value. *Bissell* v. *Huntington*, 2 N. H. 142. If judgment is rendered for less than the full value, the debtor can maintain an action against the officer for the residue, and this, too, even though the property is in the owner's possession. 3. The action is trover. The measure of damages is the full value of the property. Here, there was a demand upon the receiptor pending the action upon which the chattels were attached, in which instance our courts have never varied from the rule. *Phelps* v. *Gilchrist*, 30 N. H. 171 ; *Beecher* v. *Denniston*, 13 Gray 354 ; *Clement* v. *Little*, 42 N. H. 564. 4. The terms of the bailment were, that the chattels were to be delivered to the officer on demand. The case finds the receiptor allowed the property to go into the hands of J. G. Hill, who claimed to be the owner. How much can the officer recover in that instance ? When judgment has been recovered against the debtor, if the officer bring an action upon the receipt, the ordinary rule of damages is the amount of judgment and interest, and the officer's fees. *Bissell* v. *Huntington, Clement* v. *Little, ante.*

The lien of an attachment is not limited to the amount for which the writ commands the officer to attach, but is commensurate with the amount of the judgment and costs, though that be greater than the sum which the precept of the writ required the officer to recover. *Searle* v. *Preston*, 33 Me. 214. The bailee can only show in this action that certain of the chattels attached were not the property of the debtor, and that they have gone into the owner's hands. *Learned* v. *Bryant*, 13 Mass. 224 ; *Bursley* v. *Hamilton*, 15 Pick. 43. 5. But if the court should hold that we cannot recover the full value of the property, then we claim that we cannot be entitled to less than $800, and interest from the time of the demand. There are cases in the books where the valuation in the receipt is holden to be conclusive between the parties. But the form of action was assumpsit on the contract to deliver, and not trover for the conversion. *Scott* v. *Whittemore*, 27 N. H. 309. The rule, that a statement in the receipt of the value of the goods being conclusive upon both parties, applies only in cases of nominal attachment where there is no actual exhibition of the property, or where the officer treats the receipt as a contract and brings assumpsit. *Morrison* v. *Blodgett*, 8 N. H. 238; *Jewett* v. *Torrey*, 11 Mass. 219 ; *Drown* v. *Smith*, 3 N. H. 299.

Suppose we grant that the plaintiff can recover only a proportionate part of eight hundred dollars, as the defendant claims: what would be the result? The receiptor might have converted the whole of this property mentioned in the receipt. The measure of damages would only have been eight hundred dollars. Would the law permit the receiptor to put one half of this property into his pocket? That would be the legitimate result of the defendant's doctrine. Will he be allowed, then, to convert the excess of this property embraced in this suit, above the valuation of the receipt? Upon principle and authority, we cannot discover any reason for varying the rule in this case.

*C. R. Morrison,* for the defendant.

1. To avoid misconception, the defendant does not understand that the property was worth $800 : but, assuming that the plaintiff could prove it worth more than that, if permitted to do so, the question is as to the rule of damages under the circumstances of this case.

2. There is nothing to show that the plaintiff is accountable to Emerson for any portion of the property; and the facts stated in *Stewart* v. *Emerson,* and well known to the court, show that J. G. Hill had a good title to *all* the property as against him.

3. The defendant had none of the property in his possession at the time of the demand upon him, nor in fact at any time.

4. In permitting the property attached to remain in the possession of J. G. Hill, the defendant had a right to assume that it was worth $800, and only $800.

5. The form of action against the receiptor is indifferently trover or assumpsit, and the rule of damages the same in either case. *Webb* v. *Steele,* 13 N. H. 230, 235 ; *Holt* v. *Burbank,* 47 N. H. 164, 167 ; *Soule* v. *Austin,* 35 Vt. 515.

6. " The value is inserted in order to fix the extent of the defendant's liability in case the goods are not returned, and to ascertain their value in any dispute that might arise concerning them." *Remick* v. *Atkinson,* 11 N. H. 258 ; *Drown* v. *Smith,* 3 N. H. 299 ; *Cross* v. *Brown,* 41 N. H. 283, 287, and cases above cited.

7. " It is settled that it is a good defence, in an action upon a receipt like this, that the plaintiff has no claim to the goods, and that they have gone into the possession of the owner." *Webster* v. *Harper,* 7 N. H. 594, 597 ; 11 N. H. 558 ; 27 N. H. 321 ; 31 N. H. 302 ; 42 N. H. 590 ; 10 Cush. 307.

8. The defendant accounts for a portion of the articles receipted for by showing that they have gone into the possession of J. G. Hill, the rightful owner; and in making up the damages in this suit, the plaintiff cannot go beyond the value of the property as fixed by the receipt, after deducting the value of the articles already properly accounted for. *Haynes* v. *Tenney,* 45 N. H. 183, 185, and cases before cited.

DOE, J. A sheriff's receiptor is, in general, a depositary, holding attached property for safe-keeping without compensation, and liable,

not absolutely and at all events for safely keeping and delivering the property, but for ordinary care. No written contract is necessary. *Phelps* v. *Gilchrist*, 28 N. H. 266, 272. And when the design of the parties is put in writing, the language used is liberally construed to carry out their purpose of making the bailment a substitute and equivalent for or a continuance of the attachment, and preserving the security obtained by attachment as if the property had remained in the personal custody of the sheriff. There being enough in the receipt to show this to be the principal and controlling purpose of the contract of bailment, great liberty of construction is taken in accomplishing the object of the parties.

By the literal terms of the written agreement, the receiptor promises to deliver certain property to the sheriff or order; but this promise, absolute in form, is construed to be subject to various conditions implied from the situation and interests of the parties, and the general object of preserving the security obtained by attachment as if the property remained in the custody of the sheriff, where, for some purposes, in contemplation of law, it does remain. Construed by this general object of the bailment, the literally absolute promise of the bailee to deliver is held to be upon the usual condition of the contract of a depositary, that he is not to deliver if the bailor has no claim to the goods, and they have gone into the possession of the owner. *Webster* v. *Harper*, 7 N. H. 594, 597. This construction leaves the creditor's security what it would have been if the bailment had not been made. So far as the security is concerned, it is immaterial whether the person having a paramount title to the property reclaims it from the sheriff or from his bailee. Construed by the same general object of the bailment, the literally absolute promise of the receiptor to deliver a horse becomes a promise to exercise ordinary care in keeping the horse; and if the horse dies without fault of the receiptor, he is not liable. *Cross* v. *Brown*, 41 N. H. 283. If the horse in the receiptor's possession is killed by lightning, it is not the understanding of the parties that the security, obtained by the attachment and retained by the bailment, shall be greater than it would be if he had been killed in the personal custody of the sheriff.

The object of inserting in the receipt a valuation of the property being to fix the extent of the receiptor's liability, the language of the valuation clause is construed by the intent of the parties to give effect to that intent (*Drown* v. *Smith*, 3 N. H. 299, 302), and the defendant in this case is not liable for an amount greater than the value stated in the receipt and interest after demand. *Cross* v. *Brown*, 41 N. II. 283, 287; *Parsons* v. *Strong*, 13 Vt. 235.

The general object of the bailment being to conveniently and economically preserve the security obtained by attachment as if the bailment had not been made, and the object of the valuation clause being to fix a limit of the damages for a breach of the bailee's contract,—by following these two objects as guides in the construction of the receipt, we shall find the answer to the question raised in this case.

The whole property was valued in the receipt at $800, without any separate valuation of articles. Part of it belonged to the debtor, and part of it to J. G. Hill, who has disposed of the whole. The part belonging to the debtor was worth more than $800, and the creditor's verdict is more than $800. The valuation clause limits the extent of the defendant's liability to an amount not greater than $800 and interest after demand. With that limitation, the object of preserving security as if the bailment had not been made, shows for what amount he is liable. If the bailment had not been made, J. G. Hill could have reclaimed his property from the sheriff, and the debtor's property remaining in the sheriff's hands would have been security to the amount of its value, which is more than $800. The test of preserving security, reasonably qualified by the design of the valuation clause, makes the defendant liable for $800 and interest after demand.

To so far qualify the test of preserving security by a test of proportional value implied from the valuation clause, as to hold that the parties intended to preserve a lien of less than $800 on property of the debtor worth more than $800, would be a strained, unnatural, and unreasonable construction. The debtor's property being worth more than $800, the object of the parties must have been to preserve a lien of $800. If the property of J. G. Hill had not been attached, that object would have been accomplished ; and it could not have been their intention that the value of the lien on property of the debtor worth $800 should be impaired by a fruitless attachment and a fruitless bailment of property of J. G. Hill. It was not their purpose to make such a bailment that the more property the bailee received, the less security should be preserved,—a result contrary to the whole theory of this kind of lien. Such a result could be reached by giving a literal construction to the valuation clause, and drawing from it an inference that, if the bailee should in any way be relieved from his obligation to return any part of the property, he should be liable for not returning the rest only to the amount of its proportional value, and allowing such a construction of and such an inference from that particular clause to override the chief object of the contract. By employing one test of construction and ignoring all others, by placing an arbitrary emphasis on one purpose or one stipulation and disregarding the rest, by taking some words in a comprehensive or common, and others in a restricted or peculiar sense, almost any meaning can be put upon a contract. But, taking the whole of this contract together in a natural and ordinary sense, giving due weight to all its evident objects and to all its express stipulations, and applying all the rules of construction to all its parts to which they are applicable, we are unable to see how the main object of preserving $800 worth of security upon $800 worth of the debtor's property can be properly defeated by a rule of propor tional value implied from the valuation clause. Whether a rule of proportional value would govern if the debtor's property had been worth less than $800, is a question which we have not considered. The valuation of the receipt being $800, and the value of the debtor's

property as well as the amount of the debt being more than that sum, it is enough in this case to hold that the understanding of the parties, ascertained by a fair application of legal rules of construction, was, that under such circumstances the security should be preserved to the amount of $800, and consequently that the defendant is liable for that sum.

If the receiptor had safely kept the debtor's property and delivered it to the sheriff as he promised to do, or if the sheriff had retaken it as he had a right to do, the lien would have been preserved to the amount of more than $800 ; and in the nature of the case, from which the intent of the parties and the meaning of the receipt are largely to be inferred, no reason can be found for holding the receiptor partially discharged from his obligation to deliver to the sheriff $800 worth of the debtor's property by his permitting J. G. Hill to dispose of his own property.

The understanding of the parties was, that the receiptor should not be liable for more than $800, and that he should be liable for that amount unless his liability should be partly or wholly discharged on some reasonable ground. By a liberal construction founded on the intention to preserve security, an intention not expressly declared in the receipt, he is excused from delivering the property belonging to and disposed of by J. G. Hill, although, by the literal terms of the receipt, he promised to deliver that as well as the rest. The object being to preserve security to the amount of $800, his excuse for not delivering to the sheriff the property of J. G. Hill is no excuse for not delivering the property of the debtor. He promised to deliver the debtor's property. He has not delivered it. For not delivering it he has no excuse. The damage actually done by the inexcusable breach of his contract is more than $800. He is protected by the valuation clause against liability for the damage beyond $800. He claims a reduction of his liability below that sum. This claim cannot be supported without defeating the great object of the contract by turning the bailment from the preservation to the destruction of security.

In *Allen* v. *Carty*, 19 Vt. 65, a portion of the property attached and bailed to a receiptor belonged to the attaching creditor, and was subsequently attached by his creditors and sold to pay his debts; and it was held that, " in order to carry into effect the original intent of the parties as far as practicable," the measure of damages for the non-delivery of the residue should be its proportional value—the value of the whole specified in the receipt, and not the actual value of the whole, being taken as the basis of computation. The attaching creditor had the benefit of the property for the non-delivery of which the receiptor was not liable. It went to pay the creditor's debts. And if the receiptor was liable for the proportional value of the residue, it was held that the creditor would derive all the advantage from the receipt that was contemplated by the parties. How a case of that kind would be determined in this State, is a point on which we express no opinion.

In *Allen* v. *Carty*, the court said,—" It is well understood that these receipts are usually taken and given as security to the officer and creditors, and that no such valuation is often made as takes place between purchaser and seller. The valuation is perhaps generally made with more reference to the amount of the debt which is to be secured, than to the real value of the property. Hence the property may be greatly over or greatly underrated in the receipt, all parties understanding at the time that the object of specifying the value is not an appraisal of the property, but to furnish a security for the debt. \* \* \* This rule of damages [the proportional value] has not been considered with reference to any other class of contracts than officers' receipts, which are deemed to stand on a peculiar footing of their own."

The authorities generally seem to regard receipts for attached property as an exceptional class of contracts, governed by rules of construction different from those applicable to other contracts of deposit. Like other contracts, this contract of bailment consists of a mutual understanding, actual or presumed; and the mutual understanding is to be ascertained by the application of settled rules of construction. The explanation of particular phrases by the leading purposes of a contract, is a general rule of construction; and the leading purpose of preserving security is an important guide in the construction of this class of contracts. Whether it is an exceptional class, in the sense of being governed by exceptional rules of construction, taking it out of the class of bailments for safe-keeping, may be doubtful. In the present case, there is no occasion to exempt the contract from the operation of the general rule regarding the dominant intention of the parties, which was, to preserve a lien to the amount of $800 on the debtor's property of that value, in a manner convenient and economical for all parties interested.

*Case discharged.*